IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

D E ENTERPRISES, LLC, d/b/a CASCADES )
DEVELOPMENT GROUP, LLC, )
                               )
       Plaintiff, )
                               )
v.                              )       Civil Action No:3:06 CV-692
                               )
                               )
ZURICH NORTH AMERICA d/b/a )
ASSURANCE COMPANY OF AMERICA, )
                               )
       Defendant. )

## DEFENDANT ASSURANCE COMPANY OF AMERICA'S MOTION TO STAY

       Defendant, Assurance Company of America ("ACoA"),[1] moves the Court to stay this action until such time as the state court action, *Cascades Development Group, LLC v. Walnut Hill Water Authority, et al.*, in the Circuit Court of Tallapoosa County, Alabama, Civil Action No. CV-05-61 ("the State Court Action"), has been resolved. The entry of a stay is proper so that this Court will not unnecessarily, duplicitously, and improperly decide dispositive fact and legal issues involved in the State Court Action. As grounds for this motion, ACoA states as follows:

       1.      ACoA issued Plaintiff, DE Enterprises, LLC, d/b/a Cascades Development Group, LLC ("DE Enterprises"), Builder's Risk Policy BR 48521190, effective February 9, 2004 through February 9, 2005 ("the Policy"). On or about September 15, 2004, DE Enterprises filed a claim pursuant to the Policy for damage to one of its properties caused by water intrusion.

---

[1] Plaintiff has sued Zurich North America. Zurich North America is only a trade name for ACoA and other Zurich affiliated companies. It is not a proper defendant. To the extent that Plaintiff and/or the Court might consider Zurich North America to be a proper party, this motion should be deemed filed on behalf of both ACoA and Zurich North America.

ACoA investigated the claim and determined that the damage to the property was caused by surface water, ground water, and/or mud flow resulting from a ruptured water main. Because the Policy expressly excludes coverage for these causes of loss, on February 9, 2005, ACoA advised DE Enterprises that there was no coverage for its claim. (*See* Policy, at Defs Disc 16-17, attached hereto as "Exhibit A").

2.    On or about May 12, 2005, DE Enterprises filed a complaint in the State Court Action alleging that Walnut Hill Water Authority, Ron Jones, and Cascades at Sandy Creek, LLC (collectively referred to as "the State Court Defendants") were negligent in performing and supervising work on the water main that ruptured, causing water to flood the insured property. (*See* State Court Compl. at ¶¶ 7, 11-13, attached hereto as "Exhibit B"). Substantial written and deposition discovery has been conducted in the State Court Action.[2] The State Court Action was set for docket call on November 20, 2006 and is expected to be set for the civil jury trial term beginning on March 12, 2007. (*See* Ex. C).

3.    On July 28, 2006, DE Enterprises filed its complaint in this Court alleging that ACoA's denial of its insurance claim constitutes a breach of the insurance policy and bad faith failure to pay.

4.    The present action should be stayed pending a resolution of the State Court Action because ACoA's policy obligations to DE Enterprises are dependent, in part, on the development and outcome of certain factual and legal issues in the State Court Action. For instance, DE Enterprises' claims against the State Court Defendants necessarily involve a determination of the cause of the property damage. Based on this determination, coverage may

---

2  Discovery pleadings and the transcripts of depositions taken in the State Court Action were produced to ACoA during Plaintiff's initial disclosures. (*See also* Notice of Service of Discovery in SJIS Case Action Summary, attached hereto as "Exhibit C").

or may not be afforded under the applicable terms and conditions of the Policy. Additionally, there is evidence that will necessarily be adduced in the State Court Action regarding the extent of the alleged property damage and DE Enterprises' damages, if any. These same issues will be determined and the same evidence will be presented to the jury herein. Further, to the extent the State Court Defendants are liable for the damage to the insured property, ACoA would be entitled to a set-off in the amount of any judgment awarded against them to the extent that this Court determined ACoA was liable.

5.      Under these circumstances, the Court should stay this action pending a resolution of the State Court Action. *See Employer's Reinsurance Corp. v. Dillon*, 179 F. Supp. 2d 1371, 1374 (M.D. Ala. 2001) (granting motion to stay federal court action concerning scope of policy coverage where coverage was dependent upon nature of insured's alleged wrongdoing which was same issue pending before state court); *Home Ins. Co. v. Hillview 78 West Fire Dist.*, 395 So. 2d 43, 44-45 (Ala. 1981) (insurer could not maintain declaratory judgment action where issues to be decided were already pending in underlying action). Likewise, the scope of coverage at issue here requires a determination of the nature and cause of the property damage— the very issue presently pending in the State Court Action. Although the state court will not directly address the issue of coverage pursuant to the Policy exclusions, the evidence adduced in the State Court Action will certainly clarify the issues to be decided in this Court. Accordingly, this action should be stayed. *See Prudential Prop. and Cas. Ins. Co. v. Calvo*, 700 F. Supp. 1104, 1106 (S.D. Fla. 1988) (granting motion to stay federal court action where although state court might not specifically address coverage issue pending in federal court action, "evidence adduced at trial in the state court will bear on [the federal court issue] and will amplify and clarify the issues to be decided by [the federal] court.").

6.    It is apparent upon review of the allegations of the complaint in the State Court Action and the Policy language and exclusions that are at issue in this case that a resolution of certain coverage issues will necessarily involve a resolution of ultimate fact and/or legal issues involved in the State Court Action. It would be an inefficient use of judicial time and resources to litigate these overlapping issues in two different forums. Moreover, the State Court Action has substantially progressed and is expected to be set for trial in March of 2007. Neither party will be prejudiced by staying this action until such time as the State Court Action is resolved.

WHEREFORE, based on the foregoing, ACoA respectfully requests that this action be stayed and placed on the Court's administrative docket pending the outcome of the State Court Action.

Respectfully submitted,

/s/ Anne Laurie Smith
THOMAS M. O'HARA (OHART4140)
ANNE LAURIE SMITH (SMITA2262)
Attorney for Assurance Company of America

Of Counsel:

McDowell, Knight, Roedder & Sledge
63 South Royal St., Suite 900
P.O. Box 350
Mobile, AL 36601
Telephone: 251-432-5300
Facsimile: 251-432-5303
E-mail: asmith@mcdowellknight.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing document on Counsel for all Parties to this proceeding, by depositing a copy of same in the United States mail, first class postage prepaid and properly addressed, on this 26th day of December, 2006.

/s/ Anne Laurie Smith_____

COUNSEL:

Lee R. Benton, Esq.
Benton & Centeno LLP
2019 Third Avenue North
Birmingham, AL 35203

The Inland Marine Declarations and Endorsement, if any, issued to form a part thereof, completes the Commercial Insurance Policy numbered as follows: **BR 48521190**

**INLAND MARINE DECLARATIONS**

**ZURICH**

☒ New Policy
☐ Renewal of _____
☐ Rewrite of _____

**ASSURANCE COMPANY OF AMERICA**
**NEW YORK, NEW YORK 10038**
**A Stock Company**

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. **THIS IS A COINSURANCE CONTRACT.** Please read your policy.

**1. Named Insured and Mailing Address:**

D E ENTERPRISES LLC
7051 HWY 49 SO.
DADEVILLE, AL 36853

**3. Policy Period – From Effective Date Of:** __02   09   2004__
to (check one): ☐ Continuous Reporting  ☒ One Year From Effective Date
12:01 a.m. Standard Time at your mailing address above.

**2. Producer Information** (complete A-E)
A) Name:

Dark Insurance Agency, Inc.
P.O.Box 506
Alexander City, AL 35011

B) Telephone #: 256-234-5026
C) Fax #: 256-234-5038
D) Zurich Producer #: 12834933
E) Field Office Name: WESTERN GEORGIA
F) Field Office Code: S9

**4. Form of Business:**  ☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Joint Venture  ☐ Other

**5. Limits of Insurance** (select *either* One-Shot *or* Reporting Form option below)

| ☐ Reporting Form (continuous policy) | | | ☒ One-Shot (non-reporting form/single structure policy) HBIS-1 |
|---|---|---|---|

☐ **Annual Rate**   ☐ **Monthly Rate** (HBIS-4)
☐ Including Existing Building or Structure (HBIS-37)

☒ 1-12 Family Dwelling   ☐ Commercial Structure
☐ Including Existing Building or Structure (HBIS-37)
Property Location 236 FALLING WATER DR.
DADEVILLE, AL 36853

| | | | |
|---|---|---|---|
| A) Any one structure* | $ | 3000000 | A) Any one structure | $ | 285000 |
| B) Property temporarily at any other premises | $ | 10,000 | B) Property temporarily at any other premises | $ | 10,000 |
| C) Property in transit | $ | 25,000 | C) Property in transit | $ | 25,000 |
| D) All covered property at all locations | $ | 5,000,000 | D) All covered property at all locations (same as A unless otherwise noted) | $ | 285000 |
| E) Development/Subdivision Fences/Walls or Signs | | Per Report | E) Development/Subdivision Fences/Walls or Signs | $ | 0 |
| F) Rate | | Per Report | F) Rate | $ | 0.45 |
| G) Premium | | Per Report | G) Premium | $ | 1283 |
| H) Tax (applicable in KY only) | | Per Report | H) Tax (applicable in KY only) | $ | 0 |
| I) **Total Fully Earned Policy Premium** *Subject to underwriting guidelines* | | Per Report | I) **Total Fully Earned Policy Premium** (minimum premium applicable) | $ | 1283 |

**6. Deductible** (minimum $500 unless otherwise indicated): ☒ $1,000   ☐ $2,500   ☐ $5,000  ☐ Other_____

**7. Forms Applicable To All Coverage Parts:**

☒ 40471   Builders Risk Coverage Form
☒ 47681   Comm. Inland Marine Coverage Part
☒ CM0001  Comm. Inland Marine Conditions
☒ IL0017  Common Policy Conditions (IL0146 in WA)
☐ HBIS-58  Development/Subdivision Walls/Fences/Signs
☐ 9H0003  Florida Builders Risk Declarations
☐ HBIS-35  Windstorm or Hail Exclusion
☐ HBIS-37  Existing Building(s) or Structure(s)

☐ HBIS-42  Florida Fraud Statement
☐ HBIS-43  Windstorm Percentage Deductible
☐ HBIS-44  New York Fraud Statement
**Other Forms:** (list other applicable state and/or HBIS forms; all required state forms applicable)
IL0190, U-GU-630-A, HBIS-67 _____
_____
_____

Countersigned: _____
Date

FM 170001 Rev. 07/00

By: _____
Authorized Representative

INSURED COPY      MORTGAGEES COPY      AGENT COPY      BUILDERS RISK PLAN COPY

**EXHIBIT**
**A**

**Defs. Disc-01**

INLAND MARINE DECLARATIONS

The Inland Marine Declarations and Endorsement, if any, issued to form a part thereof, completes the Commercial Insurance Policy numbered as follows: **BR48521190**

BUILDERS RISK PLAN
RESIDENTIAL·COMMERCIAL

Ⓩ **ZURICH**

**ASSURANCE COMPANY OF AMERICA**
NEW YORK, NEW YORK 10038
A Stock Company

☒ New Policy
☐ Renewal of _____
☐ Rewrite of _____

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.
**THIS IS A COINSURANCE CONTRACT.** Please read your policy.

**1. Named Insured and Mailing Address:**

D E ENTERPRISES LLC

7051 HWY 49 S0.

DADEVILLE, AL 36853

**3. Policy Period – From Effective Date Of:** __02  09  2004__
to (check one): ☐ Continuous Reporting   ☒ One Year From Effective Date
12:01 a.m. Standard Time at your mailing address above.

**2. Producer Information** (complete A-E)
A) Name:

Dark Insurance Agency, Inc.
P.O.Box 506
Alexander City, AL 35011

B) Telephone #: 256-234-5026
C) Fax #: 256-234-5038
D) Zurich Producer #: 12834933
E) Field Office Name: WESTERN GEORGIA
F) Field Office Code: S9

---

## ANSWER ALL UNDERWRITING INFORMATION ON THE CONTRACTOR

8. Contractors Name (if different than named insured):
_____

9. **Business Description:** ☒ **Residential Contractor** ☐ Remodeler*
☐ Commercial General Contractor
* If remodeler, any work involving foundations, structural changes or movement of load bearing walls? ☐ Yes  ☐ No
**If Yes, complete Renovation Questionnaire HBIS-24**
10. **Does contractor have at least 2 years of experience?**
☒ Yes  ☐ No   If no, not eligible for coverage
11. **Is any value reported a coverage request for both the existing structure and the remodeling work on that same structure?**
☐ Yes  ☐ No   **If yes, attach HBIS-37**
12. Number of structures built/remodeled during the past 12 months?
☒ 1-2  ☐ 3-50
If more than 50, indicate the number _____

13. **Number of structures projected for the next 12 months?** ☒ 1-2  ☐ 3-50
**If more than 50, Indicate number** _____
14. **Protection Class:** ☒ 1-8  ☐ 9-10  Rate 0.45
15. Property located in:

   AL      TALLAPOOSA      36853
  (state)     (county)     (zip code)

16. Loss experience for last 3 years? Indicate cause of loss for claims over $5,000. **Do not leave blank**
☒ None
_____
_____
_____
_____
_____

---

## THIS AREA FOR COMPANY USE ONLY

| | | |
|---|---|---|
| Date: _____ | Pymt Schedule: ☐ Monthly ☐ Annual | Fire Code: _____ |
| State: _____ | X-Wind: _____ | Discretionary/Lrg Bldr Cr: _____ |
| Primary Seg: _____ | Earthquake: _____ | Negotiated Rate: _____ |
| Secondary Seg: _____ | Flood: _____ | On Demand Floater (ME): _____ |

FM 170001 Rev. 07/00

AGENT COPY        BUILDERS RISK PLAN COPY

# Commercial Inland Marine Coverage Part Quick Reference

READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**
Names Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

**COVERAGE FORM(S)**

A. COVERAGE
    1) Covered Property
    2) Property Not Covered
    3) Covered Causes of Loss
    4) Additional Coverage -- Collapse
    5) Coverage Extensions (if applicable)

C. LIMITS OF INSURANCE
D. DEDUCTIBLE (if applicable)
E. ADDITIONAL CONDITIONS
F. DEFINITIONS

B. EXCLUSIONS
-     Earthquake (if applicable)
-     Governmental Action
-     Nuclear Hazard
-     War and Military Action
-     Water (if applicable)
-     Other Exclusions

**ENDORSEMENTS** (if applicable)

**COMMERCIAL INLAND MARINE CONDITIONS**

LOSS CONDITIONS
A. Abandonment
B. Appraisal
C. Duties in the Event of Loss
D. Insurance Under Two or More Coverages
E. Loss Payment
F. Other Insurance
G. Pair, Sets or Parts
H. Privilege to Adjust With Owner
I. Recoveries
J. Reinstatement of Limit After Loss
K. Transfer of Rights of Recovery Against Others to Us

GENERAL CONDITIONS
A. Concealment, Misrepresentation or Fraud
B. Legal Action Against Us
C. No Benefit to Bailee
D. Policy Period
E. Valuation

**COMMON POLICY CONDITIONS**
A. Cancellation
B. Changes
C. Examination of Your Books and Records
D. Inspection and Surveys
E. Premiums
F. Transfer of Your Rights and Duties Under This Policy

Copyright, Insurance Services Office, Inc., 1982, 1984

47681 Rev. 9-93

Defs. Disc-03

## NON REPORTING ENDORSEMENT

This endorsement changes the Builder's Risk Coverage Form. Please read it carefully.

**E.**    **ADDITIONAL CONDITIONS** 3. WHEN COVERAGE BEGINS AND ENDS, paragraph e. is replaced by the following:

    e.    Upon expiration of the policy.

**E.**    **ADDITIONAL CONDITIONS** 4. REPORTING PROVISIONS is replaced by the following:

    4.    REPORTING PROVISIONS

        a.    The premium charged is fully earned and no refund is due you when coverage ends.

        b.    You will keep accurate construction records regarding property we cover under this policy. This includes the total estimated completed value (labor, overhead and materials and when included *profit)* of the property and a record of all contracts of sale dealing with the property.

**E.**    **ADDITIONAL CONDITIONS** 8. COINSURANCE is replaced by the following:

    8.    COINSURANCE

If the limit of insurance is less than the total estimated completed value of the property insured, you will bear a portion of any *loss*. The amount we will pay is determined by the following steps:

        a.    Divide the limit of insurance by the total estimated completed value of the Covered Property;

        b.    Multiply the total amount of the covered *loss*, before the application of any deductible, by the percentage determined in step "a";

        c.    Subtract the deductible from the figure determined in "b".

**E.**    **ADDITIONAL CONDITIONS** 9. CANCELLATION Paragraph a. is deleted.

All other terms and conditions of this policy remain unchanged.

HBIS - 1
Rev. 11-2002

**Defs. Disc-04**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

Copyright, Insurance Services Office, Inc., 1982, 1983

IL 00 17 11 85

Defs. Disc-05

F.  TRANSFER OF YOUR RIGHTS AND DUTIES
UNDER THIS POLICY

Your rights and duties under this policy may not
be transferred without our written consent except
in the case of death of an individual named in-
sured.

If you die, your rights and duties will be trans-
ferred to your legal representative but only while
acting within the scope of duties as your legal
representative. Until your legal representative is
appointed, anyone having proper temporary cus-
tody of your property will have your rights and
duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

IL 00 17 11 85

Defs. Disc-06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALABAMA CHANGES - ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    FARM COVERAGE PART

The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

IL 01 90 03 97

Copyright, Insurance Services Office, Inc., 1996

Defs. Disc-07

COMMERCIAL INLAND MARINE
CM 00 01 06 95

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss," either may make written demand for an appraisal of the "loss." In the event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they can not agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.
2. Give us prompt notice of the "loss." Include a description of the property involved.
3. As soon as possible, give us a description of how, when and where the "loss" occurred.
4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.
5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss."
7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.
8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
9. Promptly send us any legal papers or notices received concerning the "loss."
10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same "loss," we will not pay more than the actual amount of the "loss."

### E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. We reach agreement with you;
2. The entry of final judgement; or
3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

### F. OTHER INSURANCE

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

Copyright, Insurance Services Office, Inc., 1994

Defs. Disc-08

G. **PAIR, SETS OR PARTS**

1. Pair or Set. In case of "loss" to any part of a pair or set we may:

    a. Repair or replace any part to restore the pair or set to its value before the "loss;" or

    b. Pay the difference between the value of the pair or set before and after the "loss."

2. Parts. In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

H. **PRIVILEGE TO ADJUST WITH OWNER**

In the event of "loss" involving property of others in your care, custody or control, we have the right to:

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

I. **RECOVERIES**

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

J. **REINSTATEMENT OF LIMIT AFTER LOSS**

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

K. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

**GENERAL CONDITIONS**

A. **CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

B. **LEGAL ACTION AGAINST US**

No one may bring legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within two years after you first have knowledge of the "loss."

C. **NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

D. **POLICY PERIOD**

We cover "loss" commencing during the policy period shown in the Declarations.

E. **VALUATION**

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before "loss;" or

3. The cost of replacing that property with substantially identical property.

In the event of "loss," the value of the property will be determined as of the time of "loss."

**Defs. Disc-09**

## BUILDER'S RISK COVERAGE FORM

This form is subject to the information in the Declarations and the Policy Conditions, Schedules and Endorsements.

Throughout this policy, the words *you* and *your* refer to the Named Insured shown in the Declarations. The words *we*, *us* and *our* refer to the Company providing this insurance.

Words and phrases that appear in *italics* have special meaning. Refer to Section F. DEFINITIONS.

A.    **COVERAGE**

We will pay for direct physical *loss* to Covered Property from any Covered Cause of Loss described in this Coverage Form.

1.    COVERED PROPERTY, as used in the Coverage form means:

a.    Property which has been installed, or is to be installed in any commercial structure and/or any single family dwelling, private garage, or other structures that will be used to service the single family dwelling at the location which you have reported to us. This includes:

(1)    Your property;

(2)    Property of others for which you are legally responsible;

(3)    Paving, curbing, fences and outdoor fixtures;

(4)    Trees, shrubs, plants and lawns installed by you or on your behalf;

(5)    Completed single family dwelling(s) which is being used as a Model Home when reported to us as such on monthly reports with an amount shown; and

(6)    Foundations of buildings and foundations of structures in the course of construction.

2.    PROPERTY NOT COVERED

Covered Property does not include:

a.    Existing building or structure to which an addition, alteration, improvement, or repair is being made, unless specifically endorsed;

b.    Plans, blueprints, designs or specifications, except as provided in Additional Coverage section of this Coverage Form;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-10

    c.    Land and water;

    d.    *Existing Inventory*, unless specifically endorsed;

    e.    Contractors tools and equipment.

3    COVERED CAUSE OF LOSS

Covered Cause of Loss means risk of direct physical *loss* to Covered Property, except those causes of *loss* listed in the Exclusions.

4.    ADDITIONAL COVERAGE

    a.    Collapse

We will pay for direct physical *loss* to Covered Property, caused by collapse of all or part of a building or structure insured under this Coverage Form, if the collapse is caused by one of more of the following:

    (1)    Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riots; civil commotion; vandalism; breakage of glass; falling objects; weight of snow, ice or sleet; *water damage*; but only if the causes of *loss* are otherwise covered in this coverage Form;

    (2)    Hidden decay;

    (3)    Hidden insect or vermin damage;

    (4)    Weight of people or personal property;

    (5)    Weight of rain that collects on a roof;

    (6)    Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

    b.    Scaffolding, Construction Forms and Temporary Structures

    (1)    We will pay for direct physical *loss* which is caused by or results from a Covered Cause of Loss, to scaffolding, construction forms and temporary structures (including office and tool trailers), but only while they are at a construction site you have reported to us. The most we will pay for *loss* to scaffolding, construction forms and temporary structures

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Page 2 of 18

Defs. Disc-11

is $20,000.

(2)    We will also pay for the cost of re-erection of the scaffold if the *loss* of the scaffolding is caused by or results from a Covered Cause of Loss. However, the most we will pay for the re-erection of scaffolding is $10,000.

No deductible applies to this Additional Coverage.

c.    Debris Removal

We will pay your expenses to remove debris of Covered Property. This debris must result from a *loss* that we cover under this Coverage Form. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical *loss*. If the sum of the *loss* and debris removal expenses exceeds the limit of insurance applicable to the property, we will pay an additional amount of debris removal expenses you incur in excess of the limit of insurance applicable to the property up to, but not exceeding $20,000.

This Additional Coverage does not apply to costs to:

(1)  Extract *pollutants* from land or water; or

(2)  Remove, restore or replace polluted land or water.

No deductible applies to this Additional Coverage.

d.    Back-up or overflow of Sewers, Drains or Sumps

We will pay for *loss* to Covered Property caused by water that backs up or overflows from a sewer, drain or sump from within the reported location.

The most we will pay for *loss* caused by water that backs up or overflows from a sewer, drain or sump is $5,000.

No deductible applies to this Additional Coverage.

e.    Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $10,000 for your liability for fire department service charges which are:

(1)    Assumed by contract or agreement prior to *loss*; or

(2)    Required by local ordinance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

No deductible applies to this Additional Coverage.

f.  Valuable Papers and Records

We will pay for *loss* to which is caused by or results from a Covered Cause of Loss that applies to your costs to Valuable Papers and Records meaning inscribed, printed or written documents, records including deeds, drawings, maps, mortgages and includes those which exist on electronic or magnetic media.

We will pay the cost of blank materials for reproducing and labor to transcribe or copy when there is a duplicate.

We will pay your cost to research, replace or restore the lost information on lost or damaged valuable papers or records for which duplicates do not exist.

The most we will pay under this Additional Coverage is $20,000.

No deductible applies to this Additional Coverage.

g.  *Pollutant* Clean-up and Removal

We will pay your expense to extract *pollutants* from land or water at locations reported to us if the discharge, dispersal, seepage, migration, release or escape of the *pollutants* is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor, or assess the existence, concentration or effects of *pollutants*. But, we will pay for testing which is performed in the course of extracting the *pollutants* from land or water.

The most we will pay under this Additional Coverage is $15,000 for the sum of all expenses which are incurred as a result of all Covered Causes of Loss during each separate 12 month period from the effective date of the policy.

No deductible applies to this Additional Coverage.

h.  Ordinance or Law – Direct Damage

1.  Coverage for *Loss* to Undamaged Portion of the Building or Structure

(a)  If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for *loss* to the

Defs. Disc-13

undamaged portion of the property as a consequence of enforcement of any ordinance or law that:

    (1)    Requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

    (2)    Regulates the construction or repair of property, or establishes zoning or land use requirements at the construction site; and

    (3)    Is in force at the time of *loss*.

    (b)    Coverage for *loss* to the undamaged portion of the structure is included within the applicable limit of insurance for that location at the construction site.

**This only applies when the ordinance or law went into effect after the start of the construction of the structure or dwelling.**

2.    Demolition Cost Coverage

    (a)    If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay the cost to demolish and clear the construction site of undamaged parts of the property, caused by enforcement of building, zoning or land use ordinance or law.

3.    Increased Cost of Construction Coverage

    (a)    If a Covered Cause of Loss occurs to Covered Property at the construction site reported to us, we will pay for the increased cost necessary to repair or reconstruct the damaged portions of that Covered Property when the increased cost is a consequence of enforcement of building, zoning or land use ordinance or law. If the Covered Property is repaired or rebuilt, it must be intended for the same occupancy as the property prior to the *loss*, unless otherwise required by zoning or land use ordinance or law.

    (b)    If the ordinance or law requires relocation to another site, we will pay the increased cost of construction at the new site as set forth below in h. 4.

4.    The most we will pay for Demolition Cost Coverage and Increased Cost of Construction Coverage is the lesser of the following;

    (a)    the amount of the *loss*;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc 1995

Defs. Disc-14

(b)   the applicable limit of insurance; or

(c)   $1,000,000 in any one *loss*.

5.   We will not pay under this Coverage for Loss to the Undamaged Portion of the Building or Structure, Demolition Cost Coverage, or Increased Cost of Construction Coverage for costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of *pollutants*.

6.   In the event that this policy is endorsed to provide coverage for existing building(s) or structure(s), or the policy covers renovation, remodeling or other work being done on such building(s) or structure(s), this Additional Coverage shall not apply to such building(s) or structure(s).

i.   Preservation of Property

If it is necessary to move Covered Property from the location reported to us or described on the Declarations Page, to preserve it from *loss* by a Covered Cause of Loss, we will pay for any direct physical *loss* to that property:

1   While it is being moved or while temporarily stored at another location; and

2   Only if the *loss* occurs within 30 days after the property is first moved.

This Additional Coverage is part of, and not in addition to, the Limit of Insurance applicable to the Covered Property.

## B.   EXCLUSIONS

1.   We will not pay for a *loss* caused directly or indirectly by any of the following. Such *loss* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss*.

a.   Governmental Action

Seizure or destruction of property by order of any governmental authority. But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if that fire would be covered under this Coverage Form.

b.   Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-15

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the *loss* caused by that fire.

c.   War and Military Action

   (1)   War, including undeclared or civil war;

   (2)   Warlike action by a military force, including action hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

   (3)   Insurrection, rebellion, revolution, usurped power or action taken by government authority in hindering or defending against any of these.

d.   Earth Movement

   (1)   Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting.  But if earth movement results in fire or explosion, we will pay for the *loss* caused by that fire or explosion.

   (2)   Volcanic Action

      Volcanic eruption, explosion or effusion.  But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action,  we will pay  for the *loss* caused by that fire, building glass breakage or Volcanic Action.

      Volcanic Action means direct *loss* resulting from the eruption of a volcano when the *loss* is caused by:

      (a)   Airborne volcanic blast or airborne shock waves;

      (b)   Ash, dust or particulate matter; or

      (c)   Lava flow.

      All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

      Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical *loss* to the described property.

   This exclusion does not apply to Covered Property while in transit.

e.   Water

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

    (1)   Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether driven by wind or not;

    (2)   The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

        (a)   The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

        (b)   The *loss* is caused by or results from thawing of snow, sleet or ice on the building or structure.

    (3)   Mudslide or mudflow;

    (4)   Water that backs up or overflows from a sewer, drain or sump, except as provided in the Additional Coverages section in this Coverage Form;

    (5)   Water under the ground surface pressing on, or flowing or seeping through:

        (a)   Foundations, walls, floors or paved surfaces;

        (b)   Basements, whether paved or not; or

        (c)   Doors, windows or other openings.

But if water, as described in e.(1) through e.(5) above, results in fire, explosion or sprinkler leakage, we will pay for the *loss* caused by that fire, explosion or sprinkler leakage.

2.    We will not pay for a *loss* caused by or resulting from any of the following:

   a.   Delay, loss of use, or loss of market. This does not include *profit* if reported in compliance with the Reporting Provision section of this Coverage Form;

   b.   Dishonest or criminal act by you, any of your partners, employees or leased employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

This exclusion applies:

    (1)   while acting alone or in collusion with others; or

    (2)   whether or not occurring during the hours of employment.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-17

This exclusion does not apply to acts of destruction by your employees or leased employees; but theft by employees or leased employees is not covered.

This exclusion does not apply to Covered Property while it is entrusted to others who are carriers for hire.

c.  Unexplained or mysterious disappearance except for property in custody of a carrier for hire.

d.  Shortage of property found on taking inventory.

e.  Penalties for noncompliance with contract conditions.

f.  Collapse, except as provided in the Additional Coverage section in this Coverage Form.

g.  (1)  Wear and tear;

    (2)  Any quality in the property itself that causes it to damage or destroy itself; or that causes gradual deterioration;

    (3)  Insects, vermin, rodents;

    (4)  Corrosion, rust, fungus, mold, **mildew**, rot;

    (5)  Dampness, changes in or extremes of temperatures, freezing;

        However, we will cover freezing *loss* to property in the building reported to us, if you have shut off the water supply and drained the plumbing systems and appliances or made a reasonable effort to maintain heat in the building.

    (6)  Settling, cracking, shrinking, or expansion to any Covered Property.

h.  Rain, snow, sleet, sand, dust if Covered Property is in the open. This does not apply to Covered Property in the custody of a carrier for hire.

i.  Artificially generated electrical current; mechanical breakdown; rupturing or bursting caused by centrifugal force.

3.  We will not pay for a *loss* caused by or resulting from any of the following. But if *loss* by a Covered Cause of Loss results, we will pay for the resulting *loss* caused by that Covered Cause of Loss.

a.  Weather conditions which contribute in any way to a cause or event excluded in paragraph 1. above to produce the *loss*.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-18

b.  Acts or decisions, including the failure to act or decide, of any person, group, or organization representing a governmental, regulatory or controlling body.

c.  Faulty, inadequate or defective:

(1)  Planning, zoning, development, surveying, siting;

(2)  Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3)  Materials used in repair, construction, renovation or remodeling; or

(4)  Maintenance;

of all or part of any Covered Property wherever located.

d.  The discharge, dispersal, seepage, migration, release or escape of *pollutants,* except as provided under Additional Coverages.

## C.  LIMITS OF INSURANCE

The most we will pay for *loss* to any one building or structure is the lesser of the Limit of Insurance shown in the Declarations for that one building or structure or the *total estimated completed value* that was reported to us for that one building or structure.  The most we will pay for *loss* in any one occurrence is the limit shown in the Inland Marine Declarations for all Covered Property at all locations.

## D.  DEDUCTIBLE

We will not pay for *loss* in any one occurrence until the amount of covered *loss* exceeds the Deductible shown in the Declarations.  We will then pay the amount of covered *loss* which exceeds the Deductible, up to the applicable Limit of Insurance.

## E.  ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1.  COVERAGE TERRITORY

The coverage territory is United States of America (including its territories and possessions) and Canada

2.  WHERE COVERAGE APPLIES

This coverage applies to Covered Property while within the Coverage Territory while:

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc, with its permission.
Copyright, Insurance Services Office, Inc 1995

Page  10 of 18

Defs. Disc-19

a.    At any construction site you have reported;

b.    Temporarily at other premises, if the property has been designated to be installed at a location you have reported to us; or

c.    In transit except imports or exports while ocean marine coverage applies.

3.    WHEN COVERAGE BEGINS AND ENDS

We will cover risk of *loss* from the time when you are legally responsible for the Covered Property on or after the effective date of this policy if all other conditions are met.  Coverage will end at the earliest of the following:

a.    Once your interest in the Covered Property ceases;

b.    Ninety days after initial occupancy of the Covered Property unless:

   (1)    that building is being used as a Model Home;

   (2)    that building is being remodeled and is a single family dwelling; or

   (3)    that building is being used as a *Model Home Leaseback*.

c.    When the Covered Property is leased to or rented to others

   (1)    for a single family dwelling, when the building is leased or rented to others;

   (2)    for a multiple family dwelling, when 50% or more of the units in the structure are leased to or rented to others; or

   (3)    for a commercial structure, when 75% or more of the square footage space is leased to or rented to others);

   This does not apply to pre-leases established prior to construction.

d.    When  you abandon the reported location with no intention to complete it;

e.    At the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium.  If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the reporting provision below.  You have the option to report the same location a third time at the end of the second 12 month period, provided the required additional premium is paid.  Coverage for this third 12

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-20

month term will end at the end of 12 months from the month you re-reported the location for a third term;

**Coverage for Existing Buildings or Structures that are being or have been remodeled:**

**At the end of 12 months from the month when you first reported the location to us unless you report the location again and pay an additional premium. If the location is reported again and the additional premium is paid, coverage will end at the end of 12 months from the month when you re-reported the location to us as described in the reporting provision below. There is no option to report a third year.**

   f.   When permanent property insurance applies; or

   g.   Once the Covered Property is accepted by the owner or buyer.

4.   REPORTING PROVISIONS

   a.   Each month you must report to us the *total estimated completed values* of all Covered Property for each location started during the previous month. This report must be made on the form we provide.

        For the purpose of these reports, a location is started when you first put any building materials (including the foundation) on the construction site.

        If your policy is endorsed to provide coverage for existing structures that you are renovating and/or adding onto and for which you seek coverage, a location is started on the earlier of the following:

        (1)   when you first put any building materials (which includes any new, altered or expanded foundation) on the site; or

        (2)   when you acquire title to the existing structure.

   b.   You must pay premiums based on the *total estimated completed value* of the Covered Property using the rate we furnish. You must send your premium payment with the report for the reported locations to be covered. **We must receive your report and the accompanying premium payments at the address designated in our form by the last business day of the month in which the report is due, or the report is late.**

   c.   **If a report is received late, coverage begins on the day the report is received, and there is no coverage for any *loss* that occurred before that report was received.** Our acceptance of a report of values and premium payment does not waive or change any part of this policy nor stop us from asserting any right we have under the terms of this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-21

d.   The premium charged is fully earned and no refund is due you when coverage ends.

e.   A dwelling being used as a Model Home must be reported and should be identified as a Model Home.

f.   You will keep accurate construction records regarding property we cover under this policy. This includes the *total estimated completed value* of the Covered Property and a record of all contracts of sale dealing with the Covered Property.

g.   If at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. If at the end of the second 12 months from the time you first reported a start to us and you still have that location in your inventory, you may report that location to us a third time.

**Coverage for Existing Buildings or Structures that are being or have been remodeled:**

**If at the end of 12 months from the time you first reported a start to us, you still have that location in your inventory, you may report that location to us a second time. There is no option to report a third time (year).**

5.   MORTGAGE HOLDERS CLAUSE

a.   The term mortgage holder includes trustees.

b.   We will pay for covered *loss* to buildings or structures to each mortgage holder shown on a Certificate of Insurance issued by the current Agent of Record.

c.   The mortgage holder has the right to receive *loss* payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d.   If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgage holder will still have the right to receive *loss* payment if the mortgage holder:

(1)   Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2)   Submits a signed, sworn proof of *loss* within 60 days after receiving notice from us of your failure to do so;

(3)   Has notified us of any change in ownership, occupancy or substantial

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-22

change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

e.     If we pay the mortgage holder for any *loss* and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1)     The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2)     The mortgage holder's rights to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.     If we cancel this policy, we will endeavor to give written notice to the mortgage holder at least:

(1)     10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2)     30 days before the effective date of cancellation if we cancel for any other reason.

g.     We will not notify the mortgage holder if:

(1)     You cancel this policy, or

(2)     Coverage ends for any reason other than if we cancel the policy.

6.     VALUATION

General Conditions E. Valuation in the Commercial Inland Marine Conditions is replaced by the following:

In the event of *loss*, the value of the property will be determined as of the time of the *loss*.

a.     The value of the property will not be more than the amount necessary to replace the structure or repair the structure, whichever is less, to the same point of completion that had been achieved immediately before the *loss*.

b.     If the *loss* involves building materials which have not been installed, the value

40471
Rev. 11-2002

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-23

of the property will not be more than the amount necessary to replace the materials with comparable type or quality.

7. WAIVER OF COINSURANCE

If there is a *loss* to Covered Property and the cost to repair or replace such property is less than or equal to $25,000 we will **adjust** the *loss* without regard to SECTION E. ADDITIONAL CONDITIONS 8. COINSURANCE

8. COINSURANCE

If the reported value is less than the *total estimated completed value*, you will bear a portion of any *loss*. The amount we will pay is determined by the following steps:

a. Divide the reported value by the *total estimated completed value* of the Covered Property;

b. Multiply the total amount of the covered *loss* before the application of any deductible by the percentage determined in step "a";

c. Subtract the deductible from the figure determined in step "b".

**Example No. 1**

(This example assumes there is <u>no</u> penalty for underinsurance.)

| | |
|---|---|
| Deductible | $1000 |
| Reported Value | $100,000 |
| *Total Completed Estimated Value* | $100,000 |
| Amount of *loss* | $60,000 |

A. Reported Value/*Total Estimated Completed Value*
$100,000/$100,000 = 1.00

B. Amount of *Loss* x Percentage in A

$60,000 x 1.00 = $60,000

C. Deductible Amount Subtracted from results of B

$60,000 - $1,000 = $59,000

Total Amount of *Loss* Payable = $59,000

**Example No. 2**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-24

(This example assumes there is a penalty for underinsurance)

| | |
|---|---|
| Deductible | $1000 |
| Reported Value | $100,000 |
| *Total Estimated Completed Value* | $120,000 |
| Amount of *Loss* | $60,000 |

A.   Reported Value/*Total Estimated Completed Value*

   $100,000/$120,000 = .833

B.   Amount of *Loss* x Percentage in A

   $60,000 x .833 = $49,980

C.   Deductible Amount Subtracted from results of B

   $49,980 - $1,000 = $48,980

   Total Amount of *Loss* Payable = $48,980

9   CANCELLATION

   a.   The following is added to the Cancellation Condition in the Common Policy Conditions and applies only to the coverage provided in this Coverage Form:

   Cancellation of this policy will not affect the insurance in force on any location which you have reported to us or on any location which started before the effective date of the cancellation notice if that location is reported on the report due and premium payment is made. However, you cannot report any location currently in your inventory a second time after the effective date of cancellation.

   However, coverage may be canceled on any location if notice is given in writing in accordance with the cancellation provision in the Common Policy Conditions, or state amendatory endorsements.

   b.   Common Policy Conditions IL0017 Section A Cancellation Paragraph 5 is replaced by the following:

   5.   The premium for this coverage is fully earned and no refund is due when the policy is canceled.

10.   LIBERALIZATION CLAUSE

If we adopt any revision, which would broaden the coverage under this Coverage Form without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-25

11.    INTEREST OF SUBCONTRACTORS, SUB-SUBCONTRACTORS, SUPPLIERS

We cover the interest, which your subcontractors, your sub-subcontractors and your suppliers have in the Covered Property, but only while such property is situated at construction sites you have reported to us. This condition does not impair any right of subrogation we would otherwise have.

12.    TRANSFER RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after *loss* to impair them. But you may waive your rights against another party in writing:

a.    Prior to *loss* to your Covered Property.

b.    After a *loss* to your Covered Property only if, at time of *loss*, that party is one of the following:

    1.    Someone insured by this insurance;

    2.    A business firm:

        (a)    Owned or controlled by you; or

        (b)    That owns or controls you;

13.    UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

Your failure to disclose all hazards existing as of the inception date of the policy shall not affect the coverage afforded by this policy, provided such failure to disclose all hazards is not intentional and the hazard is reported to us as soon as practicable after you learn about it.

14.    REWARD

At our discretion, we may pay up to $10,000 as a reward for information which leads to a conviction in connection with a covered *loss*. The Named Insured and their employees are not eligible for this reward. Any reward payment we make should not affect the Limits of Insurance.

F.    **DEFINITIONS**

1.    *Existing Inventory* means buildings or structures where construction was started or completed prior to the inception date of this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-26

2.  *Loss* means accidental loss and accidental damage.

3.  *Model Home Leaseback* means a dwelling purchased from the Insured and is then leased back to the Insured, by the purchaser, to be used by the Insured as a Model Home until the purchaser occupies the dwelling as a residence.

4.  *Overhead* means those business expenses, other than materials and labor, incurred either directly or indirectly due to the construction of a dwelling or structure including soft costs.

5.  *Pollutants* mean any solid, liquid, gaseous or thermal irritant or contaminant. This includes, but is not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

6.  *Profit* means the difference between the selling price of the land and completed structure and your cost of the land and the completed structure. If you do not have a signed contract for the sale of the completed structure and land, the allowance for *profit* will not exceed 20%.

7.  *Total Estimated Completed Value* means all costs associated with the building and designing of the Covered Property including labor, *overhead* and materials and if included, *profit*.

8.  *Water Damage* means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1995

Defs. Disc-27

**ZURICH**

## THIS IMPORTANT DISCLOSURE NOTICE IS PART OF YOUR POLICY

We are making the following informational disclosures in compliance with The Terrorism Risk Insurance Act of 2002. No action is required on your part.

### Disclosure of Terrorism Premium

The premium charge for risk of loss resulting from acts of terrorism (as defined in the Act) under this policy is $ _____waived_____ . This amount is reflected in the total premium for this policy.

### Disclosure of Availability of Coverage for Terrorism Losses

As required by the Terrorism Risk Insurance Act of 2002, we have made available to you coverage for losses resulting from acts of terrorism (as defined in the Act) with terms, amounts, and limitations that do not differ materially as those for losses arising from events other than acts of terrorism.

### Disclosure of Federal Share of Insurance Company's Terrorism Losses

The Terrorism Risk Insurance Act of 2002 establishes a mechanism by which the United States government will share in insurance company losses resulting from acts of terrorism (as defined in the Act) after an insurance company has paid losses in excess of an annual aggregate deductible. For 2002, the insurance company deductible is 1% of direct earned premium in the prior year; for 2003, 7% of direct earned premium in the prior year; for 2004, 10% of direct earned premium in the prior year; and for 2005, 15% of direct earned premium in the prior year. The federal share of an insurance company's losses above its deductible is 90%. In the event the United States government participates in losses, the United States government may direct insurance companies to collect a terrorism surcharge from policyholders. The Act does not currently provide for insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.

### Definition of Act of Terrorism

The Terrorism Risk Insurance Act defines "act of terrorism" as any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

1. to be an act of terrorism;

2. to be a violent act or an act that is dangerous to human life, property or infrastructure;

3. to have resulted in damage within the United States, or outside of the United States in the case of an air carrier (as defined in section 40102 of title 49, United 17 States Code) or a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), or the premises of a United States mission; and

4. to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

But, no act shall be certified by the Secretary as an act of terrorism if the act is committed as part of the course of a war declared by Congress (except for workers' compensation) or property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

These disclosures are informational only and do not modify your policy or affect your rights under the policy.

Copyright Zurich American Insurance Company 2002

Z-Disc-P
U-GU-630-A   (11/02)

**Defs. Disc-28**

# DEDUCTIBLE AMENDATORY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE BUILDER'S RISK COVERAGE FORM. PLEASE READ IT CAREFULLY.

SECTION D. DEDUCTIBLE replaced by the following:

D. DEDUCTIBLE

We will not pay for *loss* in any one occurrence until the amount of covered *loss* exceeds the Deductible shown in the Declarations. We will then pay the amount of covered *loss* which exceeds the Deductible, up to the Limit of Insurance. This Deductible applies separately to each building or structure, described in the Declarations or reported to us, if two or more location(s) sustain *loss*.

Defs. Disc-29

## IN THE CIRCUIT COURT OF TALLAPOOSA COUNTY, ALABAMA
## DADEVILLE DIVISION

D E ENTERPRISES, LLC, d/b/a )
CASCADES DEVELOPMENT GROUP, )
LLC, )
                )
           Plaintiff, )
                )    cv- 06.69
v.                 )
                )
ZURICH NORTH AMERICA d/b/a )
ASSURANCE COMPANY OF AMERICA )
                )
           Defendants. )

### COMPLAINT

Comes now Plaintiff, DE Enterprises, LLC d/b/a Cascades Development Group, LLC

("Plaintiff") and states its complaint against the Defendant, as follows:

    1.     Plaintiff is an Alabama corporation with its principal operations located in

Dadeville, Alabama.

    2.     Zurich North America d/b/a Assurance Company of America ("Defendant") is

believed to be a Maryland corporation which provided certain insurance to Plaintiff, as will be

described in more detail herein below.

### Factual Statement

    3.     Plaintiff purchased real property known as "the Cascades", which it developed

and marketed for sale to the public. Prior to the purchase, the previous owner constructed water

infrastructure lines, including water mains, PVC piping, meters and the like. At some point, the

water line was severed to perform grading. Subsequent to repairs to the line being made,

Plaintiff purchased the property. On or about September 14, 2004, the fittings placed on the

G:\wpusers\LRB\Cascades-Evans-DE Ent 2210\P-complaint against zurich.wpd



repaired water lines failed and caused flooding of the house located at 236 Falling Water Drive, Walnut Hill, Alabama (the "Property"). As a result, the Property was damaged by mud and water.

4.    Plaintiff became aware of the water damage to the property located at on or about September 14, 2004, and provided notice of such loss to Defendant on or about September 15, 2004. The claim number assigned was 5350024163.

5.    Plaintiff entered into an agreement with Defendant for Defendant to provide Builder's Risk Insurance to Plaintiff effective February 9, 2004 for one year. *See* insurance policy attached as Exhibit A.

6.    From September 2004 until February 2005, Defendant investigated this loss. On February 9, 2005, Plaintiff received a letter from Defendant stating that the "loss was not a covered loss" per the policy. *See* letter attached as Exhibit B. According to Defendant, the loss is excluded based on the following section of the policy:

    e.    Water

        (4)    Water under the ground surface pressing on, or flowing or seeping through:

            (a)    Foundations, walls, floors or paved surfaces;

            (b)    Basements, whether paved or not; or

            (c)    Doors, windows or other openings.

7.    According to the Defendant, investigations of the Property loss revealed that "[t]he water entered the building by leaching through the walls causing the interior damage" and, therefore, the claim was denied. However, the damage to the Property was not caused by a flood,

surface water, rain, mud slide, mud flow, or sewage backup and it was not ground water. Therefore, there is no language within the policy which excludes the type of water damage that was incurred in this situation.

8.    Defendant's denial of the claim, contrary to the language of the policy, constitutes bad faith and a breach of its insuring agreement. To date, Defendant continues to fail to honor its insuring agreement. Defendant has not covered any damages sustained at the Property, contrary to what is required under its insuring agreement.

### COUNT ONE

9.    Plaintiff adopts and incorporates herein by reference each and every allegation set forth herein above as if fully set forth herein.

10.    Plaintiff avers that Defendant has breached the terms of its insuring agreement and insurance policy by failing to make payment to Plaintiff for losses sustained in the Property Loss. Plaintiff avers that the breaches of such contract is occasioned by failure to honor such claims which have been substantially proven although Defendant continues to fail and refuse to make payment.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Defendant for the sum of $300,000 compensatory, incidental and consequential damages, interest and costs of this action.

### COUNT TWO

11.    Plaintiff adopts and incorporates herein by reference each and every allegation set forth herein above as if fully set forth herein.

12.    Plaintiff avers that Defendant has failed to act in good faith with respect to its policy of insurance and has, instead, committed the tort of bad faith.  There is no justifiable reason for the continued failure to honor the terms of such insurance policy and, instead, Plaintiff avers that the actions of Defendant, its employees and independent contractors retained under its authority and at its direction, have actively delayed payment, protracted the claims settlement process, and otherwise displayed bad faith.  Such actions constitute constructive denial of the claim and were undertaken knowingly and intentionally.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against Hartford for the sum of $300,000 in compensatory, incidental and consequential damages, $500,000 in punitive damages, interest and costs of this action.

_____
Lee R. Benton (ASB-8421-E63L)
Attorney for Plaintiff

BENTON & CENTENO, LLP
2019 Third Avenue North
Birmingham, Alabama 35203
Phone: 205-278-8000
Facsimile: 205-278-8008

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

_____
Lee R. Benton (ASB-8421-E63L)
Attorney for Plaintiff

**<u>Serve Defendants as Shown Below</u>**

Zurich North America
P.O. Box 28777
Baltimore, MD 21240

The Inland Marine Declarations and Endorsement, if any, issued to form a part thereof, completes the Commercial Insurance Policy numbered as follows: **INLAND MARINE DECLARATIONS**  BR 48521190

**ZURICH**

ASSURANCE COMPANY OF AMERICA
NEW YORK, NEW YORK 10038
A Stock Company

☒ New Policy
☐ Renewal of _____
☐ Rewrite of _____

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. **THIS IS A COINSURANCE CONTRACT.** Please read your policy.

2. Producer Information (complete A-E)
A) Name:
   Dark Insurance Agency, Inc.
   P.O.Box 508
   Alexander City, AL 35011

1. Named Insured and Mailing Address:
   D E ENTERPRISES LLC
   7051 HWY 49 SO.
   DADEVILLE, AL 36853

B) Telephone #: 256-234-6026
C) Fax #: 256-234-5038
D) Zurich Producer #: 12834933
E) Field Office Name: WESTERN GEORGIA
F) Field Office Code: S9

3. Policy Period – From Effective Date Of: _02_ _09_ _2004_
to (check one): ☐ Continuous Reporting  ☒ One Year From Effective Date
12:01 a.m. Standard Time at your mailing address above.

4. Form of Business: ☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Joint Venture  ☐ Other
5. Limits of Insurance (select either One-Shot or Reporting Form option below)

| ☐ Reporting Form (continuous policy) | | | ☒ One-Shot (non-reporting form/single structure policy) HBIS-1 | | |
|---|---|---|---|---|---|
| | | | ☒ 1-12 Family Dwelling  ☐ Commercial Structure | | |
| ☐ Annual Rate  ☒ Monthly Rate (HBIS-4) | | | ☐ Including Existing Building or Structure (HBIS-37) | | |
| ☐ Including Existing Building or Structure (HBIS-37) | | | Property Location 238 FALLING WATER DR. | | |
| | | | DADEVILLE, AL 36853 | | |
| A) Any one structure* | $ | 3,000,000 | A) Any one structure | $ | 285,000 |
| B) Property temporarily at any other premises | $ | 10,000 | B) Property temporarily at any other premises | $ | 10,000 |
| C) Property in transit | $ | 25,000 | C) Property in transit | $ | 25,000 |
| D) All covered property at all locations | $ | 5,000,000 | D) All covered property at all locations (same as A unless otherwise noted) | $ | 285,000 |
| E) Development/Subdivision Fences/Walls or Signs | Per Report | | E) Development/Subdivision Fences/Walls or Signs | $ | 0 |
| F) Rate | Per Report | | F) Rate | $ | 0.45 |
| G) Premium | Per Report | | G) Premium | $ | 1,283.00 |
| H) Tax (applicable in KY only) | Per Report | | H) Tax (applicable in KY only) | $ | 0.00 |
| I) Total Fully Earned Policy Premium | Per Report | | I) Total Fully Earned Policy Premium (minimum premium applicable) | $ | 1,283.00 |
| * Subject to underwriting guidelines | | | | | |

6. Deductible (minimum $500 unless otherwise indicated): ☒ $1,000  ☐ $2,500  ☐ $5,000  ☐ Other_____

7. Forms Applicable To All Coverage Parts:
☒ 40471   Builders Risk Coverage Form
☒ 47681   Comm. Inland Marine Coverage Part
☒ CM0001  Comm. Inland Marine Conditions
☒ IL0017  Common Policy Conditions (IL0148 in WA)
☐ HBIS-68 Development/Subdivision Walls/Fences/Signs
☐ 9H0003  Florida Builders Risk Declarations
☐ HBIS-35 Windstorm or Hail Exclusion
☐ HBIS-37 Existing Building(s) or Structure(s)

☐ HBIS-42  Florida Fraud Statement
☐ HBIS-43  Windstorm Percentage Deductible
☐ HBIS-44  New York Fraud Statement
Other Forms: (list other applicable state and/or HBIS forms; all required state forms applicable)
IL0180, U-GU-630-A, HBIS-67

Countersigned: _____
               Date

By: _____
    Authorized Representative

FM 170001 Rev. 07/00

INSURED COPY     MORTGAGEES COPY     AGENT COPY     BUILDERS RISK PLAN COPY

# EXHIBIT A

## ALABAMA SJIS CASE DETAIL

**ROEDDER & SLEDGE, LLC**                                    **PREPARED FOR: ANGIE HAIGHT**


alacourt.com

County: **62**    Case Number: **CV 2005 000061 00**    Court Action:
Style: **CASCADES DEVELOPMENT GROUP LLC VS WALNUT HILL AUTHORITY, ET AL**

### Case

#### Case Information

| | |
|---|---|
| County: | 62 - TALLAPOOSA - DADEVILLE |
| Case Number: | CV 2005 000061 00 |
| JID: | XXX ASSIGNED JUDGE |
| Trial: | J |
| Style: | CASCADES DEVELOPMENT GROUP LLC VS WALNUT HILL AUTHORITY, ET AL |
| Filed: | 05/12/2005 |

#### Case Type

| | |
|---|---|
| Code: | CVXX |
| Type: | OTHER CV CASE |
| Track | |
| Status: | A |
| Plaintiffs: | 001 |
| Defendants: | 003 |

#### Court Action

| | |
|---|---|
| DJID: | |
| Court Action: | |
| Judgment For: | |
| Trial days: | 0 |
| Lien: | 0 |

#### Damages

| | |
|---|---|
| Amount: | $0.00 |
| Compensatory: | $0.00 |
| Punitive: | $0.00 |
| General: | $0.00 |
| None: | |

#### Other Actions

| | | | | | |
|---|---|---|---|---|---|
| Con Date: | | Cont #: | | Why: | |
| RevJmt: | | Admin Date: | | Why: | |
| Appeal Date: | | Court: | | Case: | |
| Mistrial: | | | | | |
| TBNV2: | | DSDT: | | DTYP: | |

#### Comments

| | |
|---|---|
| Comment 1: | |
| Comment 2: | |

### Settings

#### Court Dates

| | Date: | Que: | Time: | Description: |
|---|---|---|---|---|
| 1: | | | | |
| 2: | 08/01/2006 | 001 | 09:00 AM | CALJ - DOCKET CALL JURY |
| 3: | | | | |
| 4: | | | | |

### Party 1 - C 001 - CASCADES DEVELOPMENT GROUP LLC

#### Party Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Party: | C 001 | Name: | CASCADES DEVELOPMENT GROUP LLC | | | Type: | I Individual |
| Index: | Y | Alt Name: | | | | JID: | XXX |
| SSN: | | DOB: | | Sex: | | Race: | |
| Address 1: | | | | Address 2: | | | |
| Phone: | 256 | City: | | State: | AL | Zip: | 00000-0000 | Country: | US |

#### Attorneys

| | | | | | | |
|---|---|---|---|---|---|---|
| Attorney 1: | BEN008 | Name: | BENTON LEE R | City: | BIRMINGHAM | State: | AL |
| Attorney 2: | | Name: | | City: | | State: | |


EXHIBIT
C

| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| Issued: | Type: | Reissue: | Type: |
| Return: | Type: | Return: | Type: |
| Service: | Type: | Service On: | By: |
| Answer: | Type: | NS not: | NA not: |
| Warrant | Type: | Arrest: | |

### Court Action

| CACT: | Date: | For: | Exempt: |
| Amount: $0.00 | Cost: $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | |

## Party 2 - D 001 - WALNUT HILL WATER AUTHORITY

### Party Information

| Party: | D 001 | Name: | WALNUT HILL WATER AUTHORITY | | | Type: | I Individual |
| Index: | Y | Alt Name: | | | | JID: | XXX |
| SSN: | | DOB: | | Sex: | | Race: | |
| Address 1: | | | | Address 2: | | | |
| Phone: | 256 | City: | | State: | AL | Zip: | 00000-0000 | Country: | US |

### Attorneys

| Attorney 1: | TRE005 | Name: | TREADWELL MARK ALLEN III | City: DADEVILLE | State: AL |
| Attorney 2: | GUY004 | Name: | GUY N GUNTER JR | City: MONTGOMERY | State: AL |
| Attorney 3: | | Name: | | City: | State: |
| Attorney 4: | | Name: | | City: | State: |
| Attorney 5: | | Name: | | City: | State: |
| Attorney 6: | | Name: | | City: | State: |

### Service Information

| Issued: | 04/20/2005 | Type: | O Other | Reissue: | Type: |
| Return: | | Type: | | Return: | Type: |
| Service: | 05/26/2005 | Type: | Y Attorney accep | Service On: | By: |
| Answer: | 06/30/2005 | Type: | D Complaint deni | NS not: | NA not: |
| Warrant | | Type: | | Arrest: | |

### Court Action

| CACT: | Date: | For: | Exempt: |
| Amount: $0.00 | Cost: $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | |

## Party 3 - D 002 - JONES RON D/B/A

### Party Information

| Party: | D 002 | Name: | JONES RON D/B/A | | | Type: | I Individual |
| Index: | Y | Alt Name: | | | | JID: | XXX |
| SSN: | | DOB: | | Sex: | | Race: | |
| Address 1: | R L JONES CONSTRUCTION | | | Address 2: | 2202 CAMPBELL RD | | |
| Phone: | 256 | City: | ALEX CITY | State: | AL | Zip: | 35010-0000 | Country: | US |

### Attorneys

| Attorney 1: | Name: | | City: | State: |

| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| Issued: 04/20/2006 | Type: C Certified mail | Reissue: | Type: |
| Return: | Type: | Return: | Type: |
| Service: 05/21/2005 | Type: C Certified Mail | Service On: | By: |
| Answer: 06/20/2005 | Type: D Complaint deni | NS not: | NA not: |
| Warrant: | Type: | Arrest: | |

### Court Action

| CACT: | Date: | For: | Exempt: |
| Amount: $0.00 | Cost: $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | |

## Party 4 - D 003 - CASCADES OF SANDY CREEK LLC

### Party Information

| Party: D 003 | Name: CASCADES OF SANDY CREEK LLC | | Type: I Individual |
| Index: Y | Alt Name: | | JID: XXX |
| SSN: | DOB: | Sex: | Race: |
| Address 1: | | Address 2: | |
| Phone: 256 | City: | State: AL | Zip: 00000-0000 | Country: US |

### Attorneys

| Attorney 1: | Name: | | City: | State: |
| Attorney 2: | Name: | | City: | State: |
| Attorney 3: | Name: | | City: | State: |
| Attorney 4: | Name: | | City: | State: |
| Attorney 5: | Name: | | City: | State: |
| Attorney 6: | Name: | | City: | State: |

### Service Information

| Issued: 04/20/2005 | Type: C Certified mail | Reissue: 08/08/2005 | Type: C Certified mail |
| Return: 06/17/2005 | Type: C Unclaimed cert | Return: | Type: |
| Service: 08/12/2005 | Type: C Certified Mail | Service On: | By: |
| Answer: | Type: | NS not: | NA not: |
| Warrant: | Type: | Arrest: | |

### Court Action

| CACT: | Date: | For: | Exempt: |
| Amount: $0.00 | Cost: $0.00 | Other: $0.00 | Satisfied: |
| Comment: | | | |

### Case Action Summary

| Date | Time | Code | Comments | Operator |
|------|------|------|----------|----------|
| 05/12/2005 | 11:18:22 | TEXT | SUMMONS AND COMPLAINT | PAL |
| 05/26/2005 | 10:59:05 | SERC | SERVICE OF CERTIFIED MAI ON 05/21/2005 FOR D002 | PAL |
| 05/26/2005 | 10:59:37 | ATTY | LISTED AS ATTORNEY FOR D001: TREADWELL MARK ALLEN | PAL |
| 05/26/2005 | 10:59:38 | SERC | SERVICE OF ATTY ACCEPTED ON 05/26/2005 FOR D001 | PAL |
| 06/13/2005 | 8:46:27 | TEXT | NOTICE OF APPEARANCE (GUNTER GUY) | PAL |
| 06/20/2005 | 8:46:45 | TEXT | ANSWER (RICK JONES) | PAL |
| 06/21/2005 | 8:22:42 | RETU | RETURN OF UNCLAIM CERT ON 06/17/2005 FOR D003 | PAL |
| 06/21/2005 | 8:45:35 | ATTY | LISTED AS ATTORNEY FOR D001: GUY N GUNTER JR(AV02) | PAL |

| | | | | |
|---|---|---|---|---|
| 06/21/2005 | 8:48:05 | ATTY | LISTED AS ATTORNEY FOR D002: RADNEY TOM  (AV02) | PAL |
| 06/21/2005 | 8:48:13 | ANSW | ANSWER OF COMP DENIED ON 06/20/2005 FOR D002(AV02) | PAL |
| 06/29/2005 | 12:48:59 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 07/06/2005 | 12:02:07 | ANSW | ANSWER OF COMP DENIED ON 06/30/2005 FOR D001(AV02) | PAL |
| 08/08/2005 | 3:46:28 | REIS | REISSUE OF CERTIFIED MAI ON 08/08/2005 FOR D003 | PAL |
| 08/12/2005 | 3:46:41 | SERC | SERVICE OF CERTIFIED MAI ON 08/12/2005 FOR D003 | PAL |
| 09/15/2005 | 2:08:32 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 09/26/2005 | 11:53:31 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 10/25/2005 | 10:42:21 | TEXT | DEFENDANT WALNUT HILL WATER AUTHORITY'S RESPONSE | PAL |
| 10/25/2005 | 10:42:22 | TEXT |   TO REQUEST FOR ADMISSIONS | PAL |
| 10/26/2005 | 10:42:21 | TEXT | DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR | PAL |
| 10/26/2005 | 10:42:22 | TEXT |   ADMISSIONS | PAL |
| 11/01/2005 | 4:22:03 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 11/21/2005 | 3:50:41 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 12/07/2005 | 2:29:30 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 01/04/2006 | 12:00:00 | DOCK | NOTICE SENT: 01/04/2006 BENTON LEE R | PAL |
| 01/04/2006 | 12:00:00 | DOCK | NOTICE SENT: 01/04/2006 TREADWELL MARK ALLENII | PAL |
| 01/04/2006 | 12:00:00 | DOCK | NOTICE SENT: 01/04/2006 GUY N GUNTER JR | PAL |
| 01/04/2006 | 12:00:00 | DOCK | NOTICE SENT: 01/04/2006 RADNEY TOM | PAL |
| 01/04/2006 | 4:42:08 | DAT2 | SET FOR: DOCKET CALL JURY ON 01/13/2006 AT 0900A | PAL |
| 01/09/2006 | 12:21:34 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 01/19/2006 | 10:16:38 | TEXT | ORDER OF CONTINUANCE (FROM SPRING TO FALL TERM) | PAL |
| 01/19/2006 | 3:17:42 | TEXT | NOTICE OF SERVICE OF DISCOVERY DOCUMENTS | PAL |
| 06/29/2006 | 1:40:26 | TEXT | MOTION TO WITHDRAW (T RADNEY) | PAL |
| 07/10/2006 | 2:19:03 | TEXT | ORDER - MOTION TO W/D GRANTED | PAL |
| 07/12/2006 | 12:00:00 | DOCK | NOTICE SENT: 07/12/2006 BENTON LEE R | PAL |
| 07/12/2006 | 12:00:00 | DOCK | NOTICE SENT: 07/12/2006 TREADWELL MARK ALLENII | PAL |
| 07/12/2006 | 12:00:00 | DOCK | NOTICE SENT: 07/12/2006 GUY N GUNTER JR | PAL |
| 07/12/2006 | 12:00:00 | DOCK | NOTICE SENT: 07/12/2006 RADNEY TOM | PAL |
| 07/12/2006 | 10:47:11 | DAT2 | SET FOR: DOCKET CALL JURY ON 08/01/2006 AT 0900A | PAL |
| 07/14/2005 | 2:40:46 | TEXT | NOTICE OF SERVICE OF DISCOVERY | PAL |

 ***END OF THE REPORT***